Kelsen Channel View LLC. We're here today, Your Honor, in a case where the bankruptcy judge denied a motion that was unopposed by all the stakeholders, the economic stakeholders in this case, something I've never seen in my career as a bankruptcy lawyer. Was it opposed by the other would-be bidder, had previous bidder and hoped to be bidder for STAR? It was. That was the sole objector. I said there was no economic stakeholder who opposed it. The competing bidder did. And I would note that one of the key issues in this case, Your Honor, is that that competing bidder did not come to the table until after our client signed on the dotted line and submitted its bid to the court. Now, the 8.1D of the APA, Kelsen's bid was not conditioned on approval of the break-up fee. Is that correct? Your Honor, I take a different interpretation of the facts below. Under the O'Brien case, No, no. What does the document say? The document reads exactly as Your Honor describes. All right. Okay. So then, so we start out at that particular point. I realize a lot happened after that or during that as well. Yes. But what are we to take from that statement in the document? Looking at the O'Brien case, the questions that the court has to answer are, was the payment of the break-up fee beneficial to the estate and necessary? There's no particular contract language that adheres in that determination. What we have indicated in our papers is that we understood what that meant was that they would get approval of the break-up fee. There was not even supposed to be an option in this case because the bid satisfied every creditor claim and we were dealing with a one-on-one negotiation with the only affected party, the sole shareholder of the debtor. Isn't it the obligation of the bankruptcy court to look and see whether or not there's an opportunity to maximize the bankruptcy estate? I mean, I understand from your client's perspective, you thought you had it locked up, but the bankruptcy judge sees another bidder come in and say, we object and the implication is there's something else that could happen here. What is it in what the bankruptcy judge did at that point in saying, when you say there wasn't supposed to be an option, isn't there supposed to be whatever the bankruptcy judge thinks there ought to be to maximize the estate? Your Honor, the bankruptcy judge is the ultimate authority over what happens in bankruptcy court. What I would say, however, is that the bankruptcy court should not take a paternalistic view of what's in the best interest of the sole economic stakeholder who fully supports payment of the fee. The sole economic stakeholder was the shareholder, Reliant Channel View, and they were the ones that said, Judge Walrath, this isn't the O'Brien case. You should look at this differently because this is a deal between two economic stakeholders, us and Kelsen, the bidder. We don't want you to have an option and we think you should pay this. So I understand the theory that a bankruptcy court does serve a supervisory function and it's important when there are parties who are not at the table, who are not sophisticated, where there are a multitude of creditors who are not being paid. In a publicly traded corporation where there might be a majority shareholder who says, yes, this is good, but there's a thousand other minority shareholders who aren't there. I think the facts of this case are unique for that very reason. If this case, a solvent bankruptcy estate, was out of bankruptcy for whatever reason, we were in Delaware Chancery Court, we would be absolutely subject to the business judgment rule. There's no dispute about that. But we're not and we're dealing with O'Brien, which is binding precedent on us, which says you have got to meet the 503B1A standard, right? It does say that. But I also think that it doesn't say what is necessary and what is beneficial in every single case. I think you have to look at it flexibly in connection and you can't do a divorce from the facts of the case. And in this case, the economic stakeholder did not want to take the risk of a further auction process. They didn't want to take the risk, notwithstanding the contractual language that Your Honor cited. They didn't want to take the risk that we would walk away. And we cite New York law for the proposition that if you interpret it the way the appellee wants it to be interpreted, that it's meaningless, that we never were going to get that paid, that the whole exercise, the motion that they filed in the bankruptcy court asking for permission to pay us this was a lark. And we submit, it's a New York law contract, we cite the Zucorov case in our brief, which is very, very similar, certainly equitably similar here, for the proposition that if you've promised something, you shouldn't promise it on an illusory basis. And there are enough statements in the record that they believed it was necessary. They filed the motion representing that it met the O'Brien standards, that in this case, where there's no one else to oppose it, and they're taking an inconsistent position on this appeal. Well, when you keep saying there was no one else to oppose it, there was somebody to oppose it. They showed up, and they said, don't approve this, and the record seems to indicate that the bankruptcy court thought, well, an auction will promote a higher bid. And the facts bear that out. That's in fact what happened. So how can, let me ask it to you this way. How can you say that this breakup fee was necessary, that your bid was necessary to the valuation of the estate when, or to the eliciting the later bid from Four Star, when Four Star was in the bidding before, and then lost funding and came back later? I mean, that's the record. When the bankruptcy judge looks at this, it's not like your client's the only one that's been around. They've been around, and they show up and they object. Why is it an abuse of discretion by the bankruptcy judge to think, you know what, I think there's more in this for the estate if I don't commit to this breakup fee right now? Two responses to that, Your Honor. First, under O'Brien, the competing bidder didn't have standing as a non-creditor and non-shareholder of the estate. So the fact that the court took that into consideration is, in my view, inappropriate in and of itself. Was the disappointed bidder after the fact in O'Brien? Here the judge is thinking about whether to have an auction, right? Or to approve the breakup fee, if it did proceed with the auction. And what does the word estate mean? Okay, the word estate means the assets of the estate. If we're dealing in a case where there's a plan of reorganization, and the parties get to vote and say, this is how we want to divide up the assets of the estate, which is effectively what this sale was about, the bankruptcy judge is obligated to follow what the economic stakeholders want to do. So why is it that in a situation where a party comes in, makes a preemptive bid, a bid that takes everyone out of the equation except for one party, why is it that that person's view of what is necessary and beneficial to the estate is not deferred to by the bankruptcy court? The bankruptcy court's job is not to substitute its judgment for the economic realities of sophisticated parties who are represented by counsel and who are telling the court that she should do this. Now, I fully appreciate, Your Honor, that a higher and better bid was ultimately rendered as a result of this. And, you know, we have the benefit of hindsight to see that. And in light of a record before the bankruptcy judge where the bid your client made was not contingent on the breakup fee, right? Pardon me? She made her judgment at the bankruptcy court level looking at a document, which, as you and Chief Judge Zyrick have just discussed, did not make the bid contingent, right, on the breakup fee? We believe that it was. The agreement says what it says. The document says what it says? It says what it says. Okay. But it only has meaning. It's a meaningless piece of paper unless you interpret it the way we believe it should be interpreted like this. I don't know. Maybe I misheard you, but I think you said that the bankruptcy judge should not substitute her judgment in a case like this. It seems to me that's an improper standard. It seems to me the bankruptcy judge always has to exercise her judgment on something like this. But you're saying she abused her discretion in this case. Am I correct in stating that? You're correct, Your Honor. I mean, I think that it would be different in cases where you're dealing with attorneys who are officers of the court and whether they should be paid. What about the testimonies that was taken in this matter from Mr. Hardy and others and others? Obviously, you cite these because this is helpful. My question is how dispositive or how important is the testimony of these parties in this regard? Take us through some of these matters. Well, I think that if you're looking at the benefit to the estate, there is ample, very positive testimony about why the breakup fee should be approved through Mr. Hardy as the person who ran the sale process. It set a floor bid that paid everyone off in full. They were negotiating for months with Fortistar, the competing bidder, and Fortistar couldn't come up with a binding bid. Coincidentally, that happens when my client comes to the table and does put forward a competing bid. But the economic stakeholders at the time we came forward were concerned that Fortistar never would. And the fact that we came to the table and it did, we believe, demonstrates that they could have strung the estate along, they could have paid a lower amount at an auction where there was no floor bid, and everyone benefited as a result of our involvement. The company was having disputes with its lenders. The lenders were dying to be paid. They said, we won't wait any longer for the sale process to go forward. The financial advisor testified in a conflicting way. On the one hand, he said, we required the bid protections, which included the breakup fee. He said that. He later said, do they have an out if the judge doesn't approve it? He said, I believe, I don't believe they have an out. He's not a lawyer. He's not competent to testify about matters of law. The lawyers who stood up and made the legal argument said that they didn't want to take the risk, however minute it might be, that we could walk away from this arrangement. And they, as the economic stakeholder, believed that we should be paid because it was basically a contract between us and them. Now, I believe that the bankruptcy judge has a significant source of authority and a role to supervise the integrity of a bankruptcy auction. There's absolutely no doubt about that. But when the sole issue is, where does the money go? Where does the money go? And does that party want to risk the time and expense of a longer process to get a higher bid? What reason is there for the bankruptcy court to delve into that analysis? Debtors in possession are entitled to operate their businesses so that bankruptcy courts don't fulfill that function. Thank you. Any other questions? Thank you very much, Mr. Glenn. Mr. Stern. Good afternoon, Your Honors. May it please the Court, my name is Bob Stern. I'm from Richards, Leighton, and Finger in Wilmington, Delaware. I'm here on behalf of the Appellee's Debtors Reliant Energy Channel View LP, as well as its affiliates, who I'll simply refer to today as the debtors. Your Honors, in my few moments before the Court today, I will try to touch upon the three primary issues before Your Honors, to the extent of time. O'Brien, estoppel, and fundamental fairness. I would, however, like to start with this Court's seminal decision in O'Brien, because in our view, although the appellant has raised a large number of issues on appeal today, this matter really is disposed of by a simple application of O'Brien. Your Honors know O'Brien has been the law of this circuit since 1999, ten years. I think it may have been the first circuit court decision to actually address breakup fees in bankruptcy, and it's been well-respected and well-followed. Its requirements are crystal clear. A party seeking a breakup fee must show, essentially, that it benefited the estate, and it also must show that the breakup fee was necessary to obtain that benefit. I sense a question. Well, my question to you is, why is it not an abuse of discretion, as Mr. Glenn asserts, for the Bankruptcy Court to ignore the requests of all the economic stakeholders? There's a bid, it takes everybody out. I'm not going to go through it again. He's been through the litany. It's in the briefing, and it's presented to her, and it's ready to be done. And your client stands up and says, please do this. It's in our best interest. Please, let's get this done. Even though the business judgment rule doesn't apply under O'Brien, O'Brien says that the principles can inform the judge in the exercise of her discretion. Why would it have been consistent with those principles of business judgment, principles of the business judgment rule for the Bankruptcy Court to say, yeah, I hear what all of you are saying, but I'm not buying it? Your Honor, I would respectfully submit that such a decision by the bankruptcy judge in this case would not only have been an abuse of discretion, it would have been an error of law. And the reason it would have been an error of law can be directly found in O'Brien and in Section 503B. It can be found in O'Brien for the reason your Honor alluded to, that the business judgment rule does not control, so the debtor's business judgment is not as of itself dispositive, although it is informative. And the second reason is the statute expressly states on its face that it must be a necessary expense. And the way that this Court interpreted that language in O'Brien was that the benefits that are discussed, and you heard the admission today, frankly for the first time because this appellant has not been willing to admit it through any other layer of this appeal or in any brief, that the APA itself did not condition Kelson's bid on court approval of a breakup fee. It required the debtor's best efforts. We tried really hard. In fact, we tried so hard that the appellant is willing to rely on the record that we created. We simply fell short. I hope that answers your Honor's question. But turning back to O'Brien, what is important for today's purposes is that it does expressly provide, and it does so expressly, that if a potential purchaser is willing to bid without the guarantee of a breakup fee, the award of the breakup fee simply cannot, cannot be characterized as necessary to preserve the value of the estate, and accordingly cannot be awarded under Section 503B. You're saying it as a matter of law. Yes. And your authority for that is? O'Brien. You think O'Brien says that a non-contingent breakup fee could never be, could never pass muster under 503B1A? As we read O'Brien, among other things, it says, and this is on pages 537 to 538 in its conclusion, the record thus adequately supports the conclusion that awarding breakup fees and expenses to Calpine was not actually necessary to preserve the value of O'Brien's estate, and because this is the dispositive inquiry in a bankruptcy case, we find no error or abuse of discretion. That's a holding on these facts. How do you convert that into a rule of law? This is not a, at least with me, this is not a persuasive argument. I think you've got good arguments, but I don't see this one. Well, then, Your Honors, I think I'll move on. Thank you. You said your what? I said I think I'll move on. Well, I thought you said I think I'll move on. No. I'm sorry, Your Honor. I hope I didn't say that. But in any event, what you had before the bankruptcy judge was the judge heard testimony and argument where the witnesses and the lawyers had to admit, both in response to questioning from Fortistar's counsel in the case of the witnesses and to prodding by the bankruptcy judge that this bid simply was not conditioned on approval, a court approval of the breakup fee. And under those circumstances, the bankruptcy judge concluded, ruling from the bench, it's set forth in the transcript, that where the breakup fee was not necessary to bring any bidders to the table, it was not appropriate to award the breakup fee. Why should you be heard to make that argument when you made the argument before the bankruptcy court that this was just essential? Sounds like it's time for me to move on to estoppel, Your Honor. There you go. And I'll address that next. I found this to be sort of an interesting argument. With respect to my colleagues, we thought it was sort of a throwaway argument below. It first appeared in the reply brief at the very end in the district court. It showed up at the very end of the opening brief here. Suddenly, it was the lead argument in the reply brief. Excuse me, yes, in the reply brief, for Your Honors. It's based, we would respectfully submit, almost entirely on an emotional appeal as opposed to satisfying the legal requirements because the question with respect to the application of quasi and judicial estoppel is not did the debtors take, it's one of the questions, but did the debtors take an inconsistent position in the bankruptcy court? We did. We clearly did, and we admit that we did. In the bankruptcy court, we unsuccessfully supported approval of the breakup fee. We now oppose payment of that breakup fee on appeal. Clearly inconsistent positions, we fully admit. The issue is whether that inconsistency leads to an estoppel under the applicable legal principles. And we would respectfully submit that it does not for at least the following reasons. First, there are reasons for our change in position. Remember, the two different standards talk about either unconscionability or bad faith. I sense another question from Your Honor. I'm sorry. We changed our position in direct response to the bankruptcy court's rulings below. Keep in mind that our sole contractual obligation with respect to the breakup fee was to use our best efforts in the bankruptcy court to obtain it. And we did use our best efforts. No one has said that we failed in that regard, but we did fail. Now, in the asset purchase agreement itself, Kelson agreed first that any debtor obligations therein, any, were subject to bankruptcy court approval and, B, that the debtors had to comply with bankruptcy court orders. The bankruptcy court ordered that the breakup fee was not payable. We changed our position in direct response to the bankruptcy court's rulings. I'm reminded, in fact, Your Honor, I saw that just last week I think there's an opinion called G.H. Holdings that Your Honor issued, which Judge Ambrose wrote. And the court found that there was no estoppel in that case because there was a reason for the party's change in position. An insurance company basically essentially flip-flopped on its defenses in response to an amended complaint. And the court ruled that because the circumstances had changed, it was appropriate for the litigant to change its position as well. That's what happened in this case. That's why we changed our position. That I understand. But to what extent does your position before the bankruptcy court undermine the discretionary judgment of the bankruptcy judge? I apologize, Your Honor. I didn't understand that question. If you were being asked if both parties wanted something done, wouldn't there be an indication that maybe the court was abusing its discretion when it didn't do it? I have it now. Thank you very much. I once again run into the problem of Section, well, two issues, I think. To address Your Honor's question directly, there was no evidence before the court that this expense would benefit the estate. And the reason there was no evidence that it would benefit, the $15 million would benefit the estate was because the benefits that arose, that even the debtors said, I mean, I think we agreed with two benefits. We said there was a floor that could be helpful, and we said that it helped to resolve a dispute with the cash collateral. That's pretty much it. Pretty big deals, isn't it? Yeah. And you put forth expert testimony. When you say there's no evidence, you guys put an expert on the stand. Right. But the question isn't was there evidence of a benefit? There was. Because we said there was. We disagree with the extent of the benefit, and we played that out in the briefing. But my point is, if I may, the Bankruptcy Court concluded that having the estate pay $15 million was not necessary to obtain that benefit. And what the Bankruptcy Court did say was it was willing to award some expense to Kelson for providing benefits, the $2 million expense reimbursement, but not the $15 million. Think of the question this way. If the only testimony and evidence before the Bankruptcy Court is that this is important to get the deal done, that it's got benefit and it's significant for getting this deal, if that's the only testimony and evidence, and I think your colleague will stand up and say it was because there wasn't anybody in there putting other evidence on, how is it consistent with the proper exercise of discretion for the court to say no? Well, what the court heard ultimately, and again, we may have been the only ones to put on affirmative testimony, but there was also cross-examination and even questioning from the court of the lawyers. And what the court heard was that it was helpful but not necessary to pay the expense in order to obtain these benefits, particularly in light of the fact the court was focused on what was in the best interest of the estate, was that you had two live bidders in the courtroom, one of which came in and said not only, said two things, I've been here throughout this process, I lost my financing due to dislocation in the markets, but now I'm back, replaced it literally within a couple of weeks because their bid faltered and the record is mid-February, they were back in early March, and they said not only am I willing to bid without a breakup fee, I'm willing to bid more than Kelsen is. So how in that circumstance could the court have abused its discretion to conclude that it was not appropriate for the estate to pay? But it may have gotten the first bid. I agree with you on the second, on the increase. I'm sorry? I didn't hear the first one. I say I think you have a good point on the increase to $500 million, but it doesn't necessarily follow that it had, that Kelsen's action had no effect on the first bid. Well, the record before the court was that Fortistar, the second bidder, again, was in the mix the entire time and said directly to the court. In the mix, but in and out. Yes, but back in quickly, but said to the court that it was there. And remember, the record also was that Fortistar actually bid even more than Kelsen. I should say bid. Their agreement they were negotiating at the time when its financing fell apart was even higher. How should we take the statement of Judge Walroth that it's hard generally to consider how bid protections or breakup fees protect the estate? Is that? I can tell you how I read it. Is that an indication that things are stacked against you when you go in and ask for a breakup fee? Well, I mean, I think in general Section 503B1A stacks things against you anytime you ask for an administrative claim against the estate. You have a heavy burden. You need to prove both benefit and that it was necessary. And with apologies to Kelsen, because we did support it below, we weren't able to prove that. And that's why we're here before your honors today. It's just not provable on that record. And we feel compelled under the circumstances to comply with what the Bankruptcy Court's order was, which was no breakup fee. I'd like to move on just if I could. I see I have less than two minutes remaining just to speak about fundamental fairness. Fundamental fairness, I would say two things. First of all, it's suggested in the reply brief that the debtors claim that fundamental fairness is not viable after O'Brien. Of course, that's not what we're saying. What we're saying is that fundamental fairness doesn't resurrect or save a claim for a breakup fee. Did they preserve that argument? Did they preserve it? Yeah. I would respectfully submit not. I mean, we've said at every level of this appeal that it was not properly raised below, and accordingly it can't be addressed on appeal. So we think, for the reasons expressly stated in our papers, that it shouldn't be. And I'm comfortable with what we've said in our papers on that. But the last thing I would say on fundamental fairness is this appellant cites no case, we're not aware of any, that says you can use fundamental fairness to award a breakup fee where the person seeking the breakup fee can't satisfy Section 503B1A or O'Brien. In fact, the argument actually, the fundamental fairness argument that's made here presumes that Kelson cannot meet Section 503B1A or O'Brien. But failing to meet Section 503B and O'Brien is not an option in the Third Circuit if you want breakup fees. And the last thing I would say, as I see my time winding down, is that, I mean, consider the reason for fundamental fairness that the Supreme Court relied on in Redding versus Brown. The problem was that the tort claimants really couldn't provide or demonstrate a benefit to the estate. And the Supreme Court said that under the circumstances, because certainly a tort claim is not a benefit to the estate, under the circumstances for reasons of fairness, we're going to sort of look beyond that. Here, what the appellant is suggesting is, look, assume we can't meet any of these requirements, we want you to remedy the unjust enrichment of the shareholder reliant. But that's not what fundamental fairness is about. Your Honors, I see my time is up. I thank you for your patience. I would simply conclude with this. I finished where I started. At the end of the day, we would respectfully submit this is a straightforward application of O'Brien. We would ask the decisions below be affirmed. Thank you. Thank you, Mr. Stern. Mr. Glenn. Thank you. I'd like to focus on the estoppel issues, which I did. I really didn't understand that, and I'll tell you why. Suppose we said, you know what we're going to do? We're going to strike the Pelley's brief and ignore it. Okay? I don't know where that leads you. Because the fact of the matter is, that in fact, I just filed an opinion that said this. There was no objection on a particular place, basis to an attorney's fee. But the court, there was objections to the fee, but not on a point that the court raised. The court raised it. And I said, well, no judge ever has to sign an order that the judge thinks is wrong, really because the parties presented to them. So if we strike the brief, if we think that there was a basis for the court's decision, striking the brief isn't going to help you. I respectfully disagree with that, Your Honor. The Busy Beaver Holdings case, a Third Circuit case, stands for that proposition. I think that you have to limit those cases to the ones that go to the integrity of the court. The attorney's fees is exactly that category, because attorneys are officers of the court. The judge has a specific obligation to police the officers of the court. Economic stakeholders, as disparate as they might be, might not review a fee application. You know, in bankruptcy, it's funny about that. A bankruptcy court has a way of dealing and gets an involvement in a situation that no district court ever does in a case. You know, it's really getting involved and running things and so forth, but district courts don't. Bankruptcy courts are a little different. Following up on that, isn't the fact that the bankruptcy court has a responsibility to administer the estate in a manner that maximizes the value of the estate, doesn't that mean that, as Judge Greenberg has indicated, that even if there really were an empty chair here and there were an empty chair before the bankruptcy judge, she'd say, well, I'm just not, I'm not hearing you on this because you took the other side before, that she would nevertheless have the responsibility to exercise her discretion the way she thought was bound to maximize the value of the estate? I think in the peculiar circumstances here, where it's a one-on-one negotiation, the answer respectfully is no, because bankruptcy is not curing cancer. It's not about patients in the hospital. It's about dividing up a pie. And when someone who owns a piece of that pie says, I want to give it to that person over there, what policy reason is there to stop that from happening? As I said earlier, if we were in the context. It's not about legal reason that 503B1A says you have to, you can only award an administrative expense when those are actual and necessary. I mean, there's a duty to vindicate the code itself, right? I mean, she has a standard in the code. She has a standard in O'Brien. And if she doesn't think, no matter what the parties in front of her are telling her, if she and her exercise of discretion doesn't think it's meeting that standard, doesn't that judge have the responsibility to apply the standard, whether everybody in the court was saying, yeah, we think it's good enough. Respectfully, no, because bankruptcy judges allow deals all the time. That's one of the focuses of bankruptcy, to not get in the way of the economic stakeholders, cutting those deals, making arrangements to get the company out of bankruptcy. As I said earlier, the debtor in possession runs the company. It's not a trustee. The debtor in possession is the one who gets to call all the shots. And unless there's a business reason why not, the bankruptcy judge approves it. We cite cases that say courts will not substitute their business judgment for the economic stakeholders. And in fact, if you do that, it invites a whole other host of problems that are not presented by this case, frankly, but could be presented in other cases where a judge gets in the way of a company and then things go wrong thereafter because the judge did it. And that things went better in this case should not drive the outcome. When you have a multibillion dollar company who made these representations in court, who was prepared to give us that piece of pie. Thank you. Thank you. The case was very well argued. We will take the matter under advisement.